### In re PEARS.†

#### (Circuit Court of Appeals, Third Circuit. May 14, 1913.)

#### No. 1,732.

BANKRUPTCY (§ 396*)—EXEMPTIONS—"WAGES OR SALARY."

    A grantor conveyed his property, including a going business, to trustees, one of whom was the bankrupt, to whom the grantor conveyed the special management and superintendence of the business, in addition to his other duties as trustee, giving him $100 a week as a charge against the business, whether profits were made or not, and increasing such sum if one-fourth of the net profits should exceed $5,200. The trustees were also given the option to divide any surplus arising from the profits of the business, and the rents, profits, and proceeds of the real property, among the children, share and share alike, and at their discretion to make partition of the real estate in the same manner. The bankrupt acted under the deed of trust for nearly 18 years, and for the year 1911, just prior to bankruptcy, his share of the net profits was ascertained to be $12,690.97. After deducting the $100 a week, a balance of $7,490.97 was left. *Held*, that such balance was not "wages or salary," which the

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes
† Rehearing denied June 20, 1913.

bankrupt could claim as exempt under Act Pa. April 15, 1845 (P. L. 460) § 5, declaring that the wages of any laborer or the salary of any person in public or private employment shall be exempt.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 659–638; Dec. Dig. § 396.*

For other definitions, see Words and Phrases, vol. 8, pp. 7369–7373, 7831.]

Petition to Review from the District Court of the United States for the Western District of Pennsylvania; Charles P. Orr, Judge.

In the matter of bankruptcy proceedings against H. P. Pears. On petition by the bankrupt to revise an order of the District Court rejecting a claim by the bankrupt to be allowed $7,490.97 under the exemption laws as wages or salary. Affirmed.

Lyon & Hunter, of Pittsburgh, Pa., for petitioner.

Seymour, Patterson & Siebeneck, of Pittsburgh, Pa., for respondent.

Before GRAY, BUFFINGTON, and McPHERSON, Circuit Judges.

J. B. McPHERSON, Circuit Judge. The petitioner was adjudicated a bankrupt in January, 1912, and in due season presented a claim asking to be allowed $7,490.97 under the exemption laws of Pennsylvania, asserting this sum to be wages or salary. Both the referee and the District Court rejected the claim, their opinions dealing with some questions that we do not find it necessary to discuss. The facts disclose an unusual situation, and should therefore be stated in some detail:

Wm. G. Johnston (who is still living) was a wealthy resident of Pittsburgh, among whose possessions was a prosperous business conducted under the name of Wm. G. Johnston & Co. In June, 1894, having decided to retire from active affairs, he disposed of a large amount of real and personal property by the following voluntary settlement, or deed of trust:

### "Memorandum.

"Know all men by these presents, that I, Wm. G. Johnston, of the city of Pittsburgh, county of Allegheny, and state of Pennsylvania, do hereby partition among my several children, viz., Valeria M. Pears (wife of Harry P. Pears), Elizabeth J. Patterson (wife of Robert W. Patterson), Mary Reed Johnston, Stewart Johnston, and Paul S. Johnston—provided, however, that the interest of the said Paul S. Johnston shall be held in trust by my friend, Alexander H. Patterson, now cashier of the Duquesne National Bank, he consenting to act in this behalf, subject to revocation and the appointment of a successor as I, or my executors, may hereafter determine—certain portions of my real and personal property as hereinafter set forth, upon the conditions specifically stated in this paper; and for the execution of all the provisions mentioned herein, I do also appoint my son, Stewart Johnston, and my son-in-law, Harry P. Pears, trustees to perform the duties of said trust without compensation and to be subject to revocation, and the appointment of others in their room and stead, at my will.

"Article First. I agree to convey to the said trustees, for the benefit of my several above-named children, in fee simple, by good and sufficient deed, duly to be executed, all my property, real, situate in the Twentieth ward, city

of Pittsburgh, state of Pennsylvania, said property being now unimproved; also a lot of ground in the Fourth ward, of same city and state, having thereon a three-story brick house, known as No. 906 Penn avenue, and adjoining my business property at the corner of said Penn avenue and Ninth street, and northeastwardly therefrom, being the same recently conveyed to me by deed of Mary A. McKenna. The said trustees may sell any, or all, of said properties, whenever in their judgment good and fair prices can be secured therefor, but not upon a depressed or declining market, upon such terms as to payment as they may see fit, and apply the proceeds so far as may be necessary to the extinguishing of any unpaid indebtedness of myself, after which they shall divide the residue, or so much of it as will be required, to make payments to my several children in the amounts below stated: To Valeria M. Pears, six thousand dollars ($6,000); to Elizabeth J. Patterson forty-five hundred dollars ($4,500); to Stewart Johnston two thousand dollars ($2,000); and to A. H. Patterson, trustee for Paul S. Johnston, three thousand three hundred dollars ($3,300), less the sum of three hundred dollars ($300) to be charged to Paul S. Johnston on the books of Wm. G. Johnston & Co. on August 13, 1894—which indebtedness the trustees aforesaid are to liquidate from the sales aforesaid or from any moneys coming to them from other sources. Meanwhile the trustees shall pay all taxes, insurance, and repairs necessary to keeping the several properties in as good condition as at present.

"Article Second. I agree to transfer to the said trustees the entire assets of the business now and hereafter to be conducted under the style of Wm. G. Johnston & Co., said transfer to include the cash, commercial paper, book accounts, fixtures, machinery, stocks of goods, materials, and all assets of whatsoever kind which now belong to the concern aforesaid, in trust for the purpose hereinafter set forth:

"First. During the term of my life, there shall be paid to me by the said trustees the sum of seven thousand five hundred dollars ($7,500) in equal monthly installments of six hundred and twenty-five dollars ($625) on the last day of each and every month; the same to be deposited to my credit in the Duquesne National Bank of Pittsburgh, or such other depository or depositaries as I may from time to time designate.

"Second. All debts due by me shall be fully discharged, and in the order herein set forth, viz.: First—Bills payable as now appearing on the books of the firm, and in any order that the trustees may determine, viz.: An amount now due and payable to Katharine and Mary Kelly, twenty-five hundred dollars ($2,500). One note bearing date May 7, 1891, for four thousand dollars ($4,000) discounted by the Duquesne National Bank, Pittsburgh. Three notes discounted by the Second National Bank, Pittsburgh, as follows: One dated May 7, 1894, for four thousand dollars ($4,000); one dated May 19, 1894, for thirty-two hundred dollars ($3,200); and one dated May 22, 1891, for twenty-five hundred dollars ($2,500). All said notes being payable in four months from their several dates. Second—A mortgage held by J. W. Paul, on the building owned by me at the corner of Penn avenue and Ninth street, amounting to eight thousand three hundred and thirty-three dollars and thirty-three cents ($8,333.33). Third—And the following in such order as the trustees may determine: My notes at the Citizens' Insurance Company, of Pittsburgh, secured by mortgage on properties on South Highland avenue, heretofore conveyed by me by deed to my several aforenamed children; also a mortgage on the property known as No. 906 Penn avenue, conveyed by me by deed to the trustees herein named, amounting to eleven thousand five hundred dollars ($11,500).

"Article Third. The said trustees shall discharge from time to time as the same may become due: First. All interest or discounts upon the bills payable, viz., notes in banks, the obligation due Katharine and Mary Kelly, and upon notes held by the Citizens' Insurance Company, upon the mortgage held by J. W. Paul, and upon the mortgage upon the property No. 906 Penn avenue. Second. All taxes and water rents upon my building at the corner of Penn avenue and Ninth street, in which is conducted the business of Wm. G. Johnston & Co. Third. All premiums upon an amount of in-

surance upon the building by which in case of loss by fire I shall be indemnified in the sum of thirty thousand dollars ($30,000). Fourth. All premiums upon the insurance of the plate glass contained in said building. Fifth. All premiums upon an amount of insurance which shall represent 80 per cent. of the values of the contents of said building, such as machinery, materials, fixtures, stock of goods, etc., said insurance being upon the co-operative plan. Sixth. That they shall pay for all necessary repairs to keep the building in good and proper condition.

"Article Fourth. That the said trustees shall as an annual rental upon my building at the corner of Penn avenue and Ninth street pay the further sum of seven thousand five hundred dollars ($7,500) in equal monthly installments of six hundred and twenty-five dollars ($625) on the last day of each and every month, the same to be deposited to my credit in the Duquesne National Bank of Pittsburgh, or such other depositary or depositaries as I may from time to time designate.

"Article Fifth. That I shall have at all times free access to the books of the concern of Wm. G. Johnston & Co., either in person, or by such agent as I may appoint, and to examine the same to my entire satisfaction.

"Article Sixth. That the said trustees shall furnish me monthly a statement of the book accounts as shown in the balance book of the concern; also semiannually on or before the middle of the months of February and August, a full and complete statement, showing the profit and loss account and all the closing entries, made upon the private ledger, and any other information I may require.

"Article Seventh. Harry P. Pears is hereby authorized to be the drawer of all notes given in pursuance of the business, and for such purpose he shall sign the name of the concern, Wm. G. Johnston & Co., and in the case of all notes offered for discount for the use of the business, said notes shall be made payable to the order of Stewart Johnston and Harry P. Pears, and be by them so indorsed. Other notes given for any indebtedness of the concern shall be made payable simply to the order of any such creditor. And he shall also be authorized to use the name of the firm as above provided in drawing checks upon banks where funds of the concern are deposited, or for any other purposes which may be found necessary in the conduct of the business.

"Article Eighth. That Harry P. Pears shall have the special management and superintendence of the business of the concern, subject to the revocation and appointment of a successor by me, or in the event of my death by my executors. And for the faithful performance of such duties he shall receive as compensation, to be paid by the firm, one-fourth the net profits derived from the business during each and every year terminating with the last day of December, and as determined by the closing of the books upon the last business day of the month of January following; and on account of said salary he shall receive at the close of each week in the year the sum of one hundred dollars ($100), which sum in any event shall be duly paid in. The inventories of the several departments of the business shall be determined upon the basis hitherto established, and when the definite amount of his share of the profits has been arrived at, and a balance found due him, the head bookkeeper, Walter N. Haslett, or any successor whose appointment by the trustees has been duly made, shall certify the same to Stewart Johnston, when a note at four months, to be dated on the first working day of February in the year in question, shall be drawn to his personal order, to be duly paid at maturity, and the same upon delivery shall be charged to the profit and loss account of the current year, and in no case shall he be allowed to draw other sums from the moneys of the concern, either for his own use or for making loans to others.

"Article Ninth. The trustees shall pay the annual premiums upon life insurance policies obtained during the lifetime of my late wife, and for her benefit, which now by reason of her death are inherited by her several children, as follows, viz.: One obtained from the Equitable Life Assurance Society of New York, for ten thousand dollars ($10,000), being policy No. 40152. One obtained from the Mutual Benefit Life Insurance Company of New Jersey,

for fifteen thousand dollars ($15,000), being policy No. 37087. The dividends arising from these policies, together with those from two paid-up policies, for ten thousand dollars ($10,000) each, obtained from the Mutual Life Insurance Company of New York, and numbered respectively 34362 and 107693, may be used for reducing the amounts of the annual premiums of the two first-named policies.

"Article Tenth. Whenever the conditions named in this instrument have been fully met, the trustees for my children as set forth herein may at their option divide among the same, share and share alike, so much of the remaining profits arising from the business of Wm. G. Johnston & Co. as they may see fit, together with any or all of the rents, profits, issues, or process of sales arising from the real estate, or, if they deem proper, they may make division in like manner of the real estate.

"Article Eleventh. This contract shall go into effect upon the 1st day of July, A. D. 1894; all of the several parties herein named as beneficiaries, giving cordial assent thereto by their signatures. Made at Pittsburgh this twenty-seventh day of June, A. D. 1894.

"Witness my hand and signature.                                  Wm. G. Johnston.
"Witness:
    "Eleanor D. Johnston."

From the internal evidence the foregoing instrument was probably not drawn by a lawyer, but its general objects are not in doubt. The settlor understands it to be a permanent, and not merely a temporary, arrangement; for he does not reserve the right to revoke it, and in several particulars it is the plain equivalent of a last will. Clearly, also, he knows that he is relinquishing control, and is making a final settlement in trust. He speaks of it as a trust, and he repeatedly refers to his son Stewart and his son-in-law, the bankrupt, as trustees. He does not regard them as employés, but as members of his family, upon whom he may lay a family burden. He directs that they shall perform their duties without compensation, and he reserves the right to revoke their appointment and to appoint other trustees at his pleasure. He agrees to convey certain specified real estate, requiring the trustees to pay taxes, insurance, and repairs; also giving them power to sell and directing how the proceeds shall be disposed of. He provides that they shall pay the premiums upon certain life insurance policies referred to specifically in article 9. He requires them to pay a specified rent for the building in which the business is to be continued, and to pay taxes, interest, insurance, and repairs; and he agrees to transfer to them all the assets of Wm. G. Johnston & Co., distinctly stating that the transfer is in trust for certain purposes, among these being the payment to himself of $7,500 a year during his life. He provides with care that his debts shall be paid, retains full power to inspect the books whenever he pleases, requires frequent and full information concerning the business, and even specifies by whom notes and checks shall be drawn or indorsed. Then he confides to the bankrupt the special management and superintendence of the business (in addition to his other duties as trustee), and gives him $100 a week as a charge against the business, whether profits are made or not, increasing this sum if one-fourth of the net profits should exceed $5,200. The trustees also are given the option to divide any surplus arising from the profits of the business, and from the rents, profits, and proceeds of the real estate, among the children, share and share alike; and at their discretion they may make partition of the

real estate in the same manner. When the paper was prepared, the settlor apparently intended that the beneficiaries should assent to it by their signatures; but this was not done. Its provisions, however, were carried out, and the bankrupt acted under it for nearly 18 years, giving practically all his time and attention to the business of William G. Johnston & Co. For the year 1911, his share of the net profits was ascertained to be $12,690.97, and after deducting the sum of $100 per week, the disputed balance of $7,490.97 was left, all of which he claimed to be exempt as wages or salary, relying upon the statutes of Pennsylvania, and especially upon the act of 1845 (P. L. 459), the proviso to section 5 declaring:

"That the wages of any laborers, or the salary of any person in public or private employment, shall not be liable to attachment in the hands of the employer."

In our opinion, the sum in controversy is neither "wages" nor "salary" in the hands of an employer, and is not exempt from execution under the statutes of Pennsylvania. The bankrupt was not a servant, nor was Wm. G. Johnston a master or employer, in any customary or allowable sense of these terms; indeed, the settlor was deliberately leaving the class of employers altogether, with no apparent intention of resuming his place. As already stated, the transaction was a voluntary settlement in trust; the bankrupt was one of the trustees; the settlor and the other persons named were the beneficiaries; and the compensation to be paid to the bankrupt, while it was, of course, intended to be remuneration for his services in performing a part of his duties as trustee, cannot be classed with either "wages" or "salary." These terms may not always be easy to define with exactness, and they are sometimes difficult to discriminate; but the scope of each term has its limitations, and we feel able to say with confidence that neither term is, or can be, applied to the compensation earned by a trustee—save perhaps occasionally in careless and unconventional speech. Certainly in a statute, where words are always presumed to bear their ordinary meaning, we do not see how we can give to either of them the exceptional reach now contended for.

The order of the District Court is affirmed.